**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

NASSER AL-TALAQANI, THAAMER AL-
TALAQANI, AAMER AL-TALAQANI, and SARA
ALMOSAWI

       Plaintiffs,                           Case No. 15-10048

v.

LIBERTY MUTUAL GENERAL INSURANCE
CO.,

       Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Pending before the court is Defendant's Motion for Summary Judgment. In this

insurance-coverage action, Plaintiffs Nasser Al-Talaqani (Nasser), Thaamer Al-Talaqani

(Thaamer), Namer Al-Talaqani (Namer), Aamer Al-Talaqani (Aamer), and Sara

Almosawi (Sara), contend that Defendant Liberty Mutual General Insurance Company

("Liberty Mutual") breached an automobile insurance policy by rescinding the policy

after Plaintiffs made Personal Injury Protection (PIP), Uninsured Motorists, and Collision

Damage claims. (Dkt. #1-1, Pg. ID 14-17.) Defendant filed the instant Motion for

Summary Judgment asserting that the policy was validly rescinded on December 12,

2013 because of misrepresentations made in Plaintiff Sara's auto insurance application.

(Dkt. # 12, Pg. ID 236.) Plaintiffs filed a response to the motion (Dkt. # 18), to which

Defendant replied (Dkt. 20).[1] The matter is fully briefed and the court concludes that a

---

[1] Plaintiffs originally failed to file a timely response to the Motion for Summary
Judgment. The court issued an order to show cause why Defendant's Motion should not

hearing on the motion is unnecessary. E.D. Mich. L.R. 7.1(f). For the reasons stated below the court will deny Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiffs Sara and Namer are married and are the parents of Plaintiffs Nasser, Thaamer, and Aamer. (Dkt. # 12.) Sara and Namer live in separate homes, at 6844 Evergreen and 6836 Evergreen, respectively. (Dkt. # 18, Pg. ID 611; Dkt. # 18, Pg. ID 630.) Nasser lives with his mother at 6844 Evergreen, Thaamer lives with his father at 6836 Evergreen, and Aamer lives at the family's rental property at 6492 Evergreen and occasionally resides at his mother's home. (Dkt. # 12-9, Pg. ID. 329; Dkt. # 12-13, Pg. ID 489; Dkt. # 12-11, Pg. ID 420.)

On June 7, 2013, Defendant Liberty Mutual issued Plaintiff Sara an automobile insurance policy for two vehicles, a 2001 Oldsmobile and a 2005 Pontiac Grand Prix. (Dkt. # 12, Pg. ID 236; Dkt. # 18, Pg. ID 580.) The policy covering the vehicles was originally under Aamer's name. (Dkt. # 12-13, Pg. ID 481) Sara obtained the insurance policy through Liberty Mutual's insurance representative Todd Boone, and in doing so listed herself as the titled owner of the insured vehicles. (Dkt. # 18, Pg. ID 580.) Sara does not own the 2001 Oldsmobile nor the 2005 Pontiac. (Dkt. # 12-13, Pg. ID 474.) Additionally, Sara did not disclose that her driving age son Nasser lived with her at the time. (Dkt. # 12-8, Pg. ID 319.) Sara later added a 2012 Dodge, leased by her husband

---

be granted or alternatively why the case should not be dismissed for Plaintiffs' failure to prosecute. (Dkt. # 17.) Plaintiffs timely responded to the order to show cause and also filed a response to the Motion for Summary Judgment. (Dkt. ## 18, 19.) Because the court is satisfied that the mistake was a a one-time, inadvertent clerical error, the court will exercise its discretion to consider the response.

Namer, to the policy. (Dkt. # 12-12, Pg. ID 442; Dkt. # 12-14, Pg. ID 522.) Aamer owns

the 2001 Oldsmobile and Nasser owns the 2005 Pontiac. (Dkt. # 12-14, Pg. ID 553-55.)

Plaintiffs filed insurance claims based on three accidents. On September 26,

2013, a neighbor's vehicle hit the 2012 Dodge while the Dodge was parked on the

street. (Dkt. # 12, Pg. ID 239.) On that same day, Nasser and Sara were injured in the

2001 Oldsmobile after being struck by another vehicle. (Dkt. # 18, Pg. ID 582.) Lastly,

on October 11, 2013, Thaamer was injured after a passing vehicle struck the 2005

Pontiac while the Pontiac was parked on the side of the road due to a flat tire. (*Id.*)

Plaintiff submitted claims seeking Personal Injury Protection (PIP), Uninsured Motorist

coverage, and Collision Damage as a result of the accidents. (Dkt. # 18, Pg. ID 580.)

Defendant refused to pay the claims and, in a letter dated December 12, 2013,

Defendant notified Plaintiff that Defendant rescinded the insurance policy declaring the

policy "null and void as of June 7, 2013," based on a misrepresentation Plaintiff made

on the Liberty Mutual insurance application. (Dkt. # 12-3, Pg. ID 295.) The letter,

addressed to Sara, states that

> [t]he following information was undisclosed, concealed or otherwise
> misrepresented. . . You are not the registered owner of the vehicles on
> your policy and as such, you have no insurable interest in the vehicles . . .
> Had we known about this information, we would have refused to issue the
> policy.

(*Id.*)

The application states that "only the vehicles listed above have coverage under

this policy . . . Each vehicle must be owned or leased by a named Insured." (Dkt. # 12-3,

Pg. ID 289.) The insurance application further contains an "Applicant Authorization and

Acknowledgment" section, that states:

> Signing this form does not bind the applicant to complete the insurance but it is agreed that this form shall be the basis of the contract should a policy be issued. In the event that any material misrepresentations, omissions, concealment of facts and/or incorrect statements are made by or on behalf of the insured during the application process, we may exercise whatever legal remedies may be available to us under the laws and regulations of this state . . . By signing below I acknowledge that I have read and understand the Applicant Authorization and Acknowledgment as well as validated information on all pages of the application.

(*Id.*)

Additionally, Defendant's "General Policy" states that no coverage is issued if the insured "intentionally conceals or misrepresents any material fact or circumstance," makes false statements, or engages in fraudulent conduct relating to the LM General Policy." (Dkt. # 12, Pg. ID 257)

Plaintiffs assert that in placing the insurance policy of the vehicles in Sara's name, they did not misrepresent the ownership status of the vehicles. (Dkt. # 18, Pg. ID 581.) Plaintiffs assert that during the process of applying for the policy insuring vehicles under Sara's name, Lead Sales Representative, Todd Boone ("Boone") sat down with Sara, Nasser, and Aamer in order to have Sara sign the appropriate paperwork. (*Id.* at Pg. ID 580-81.) In deposition, Aamer stated that after he showed Boone the vehicle registration card for the 2001 Oldsmobile, Boone suggested that insurance coverage would be cheaper if the policy was transferred into Sara's name. (Dkt. # 12-11, Pg. ID 432.) Boone's story differs, and he asserts that he advised Aamer that the vehicles must be owned by the named insured and asserts that the policy transfer occurred over the phone. (Dkt. # 12-2, Pg. ID 267.)

4

## II. STANDARD

A court will enter summary judgment only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). The movant has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Additionally, the court's role is not to weigh the evidence and rule on the truth of the matter, but to determine whether there is a genuine issue to be considered at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Summary judgment, therefore, is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52 (1986).

## III. DISCUSSION

It is well-settled in Michigan "that where an insured makes a material misrepresentation in the application for insurance, including no-fault insurance, the insurer is entitled to rescind the policy and declare it void *ab initio.*" *Lake States Ins. Co. v. Wilson*, 586 N.W.2d 113, 115 (Mich. Ct. App. 1998) (citing *Lash v. Allstate Ins. Co.* 532 N.W.2d 869 (Mich. Ct. App. 1995)). A representation is material "where

5

communication of it would have had the effect of 'substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charge of an increased premium'." *Oade v. Jackson Nat. Life Ins. Co. of Mich.*, 632 N.W.2d 126, 131 (Mich. 2001). If a misrepresentation is material, the insurer may rescind the policy "without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer. Reliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage." *Id.*

However, the above rule regarding rescission allows a "*blameless* contracting party to avoid its contractual obligations" due to fraud. *Titan Ins., Co. v. Hyten*, 491 Mich. 547, 570 (2012) (emphasis added). An insurer may be estopped from rescinding a policy based on a misrepresentation where the insurer knew about the allegedly misrepresented fact and chose not to rescind the policy. *Burton v. Wolverine Mut. Ins. Co.*, 540 N.W.2d 480, 482 (Ct. App. Mich. 1995). *Cf. Keys v. Pace*, 358 Mich. 74, 84 (1959) ("The short answer to the arguments of waiver and estoppel is that a litigant cannot be held estopped to assert a defense . . . because of facts he doesn't know . . . . That is not to say, of course, that one may willfully close his eyes to that which others clearly see."). In regards to knowledge obtained by a company's representative, the rule of agency requires that "the principal is chargeable with, and is bound by, the knowledge of or notice to his agent received while the agent is acting within the scope of his authority." *Hawkeye Cas. Co. v. Holcomb*, 5 N.W.2d 477, 481 (Mich. 1942). Specifically, in cases involving insurances policies, "when essential facts are disclosed to the insurer's agent, the knowledge of that information will be imputed to the insurance company and the insurance company is estopped from denial of coverage." *Shah v.*

6

2:15-cv-10048-RHC-DRG   Doc # 21   Filed 08/19/16   Pg 7 of 13   Pg ID 712

*Gen. Am. Life Ins. Co.*, 965 F. Supp. 978, 982 (1997).

Defendant contends that Sara's misrepresentation of the ownership status of the insured vehicles entitles Defendant to rescind the policy and, thus, warrants summary judgement. (Dkt. # 12, Pg. ID 247.) Given the state of the fact record, the court must disagree. Although Plaintiff's response to the Motion for Summary Judgment is scattered, and internally consistent,[2] at least Aamer's testimony creates a genuine issue of fact as to whether a meeting between Boone and the family occurred and whether Boone had knowledge of the true ownership status of the vehicles.[3] Viewing the facts in the light most favorable to Plaintiffs, the court concludes that a jury could possibly find that Defendant's agent knew the ownership status of the vehicles when Sara signed the application, as Plaintiffs assert. In that case, then, "knowledge of that information [is] imputed to the [defendant] and the [defendant] is estopped from denial of coverage." *Shah*, 965 F.Supp. at 982.

This case is similar to *Burton v. Wolverine Mut. Ins. Co.*, where a defendant insurance company discovered that the plaintiff misrepresented his driving record on the

---

[2] As Defendant points out, at least twice in the opposition brief Plaintiffs' counsel asserts that Sara did not meet with Todd Boone. (*See* Pls.' Counter-Statement of Material Facts ¶¶ 2, 30.) This plainly undercuts the primary thrust of Plaintiffs' argument, that the meeting did occur and that at this meeting Sara revealed the true ownership of the vehicles to Boone. (Dkt. # 18, Pg. ID 581.) However, because it is clear from Plaintiffs' briefing that, as a general matter, they assert the meeting did happen and deposition testimony (attached to the opposition brief) from Sara and Aamer provide factual support for this argument, the court must consider such evidence even in the face counsel's inconsistent argument.

[3] The court further notes that even Sara's testimony is of little value. She, at one point, claims a meeting did occur and then moments later states that no such meeting occurred, then clarifies that she doesn't remember, though repeatedly said the policy transfer at issue occurred over the phone. (Dkt. # 18, Pg. ID 622-24.)

policy application and notified the plaintiff insured that the policy would be canceled (not rescinded) at a future date. 540 N.W.2d at 481-82. The plaintiff was later involved in an accident that occurred before the communicated cancellation date. *Id.* The defendant refused to pay the policy and subsequently voided the policy *ab initio*, attempting to disavow its previous assurance that plaintiff would be insured until a certain date. *Id.* The court reasoned that the defendant's notice of cancellation "induced plaintiffs to believe that they would have insurance until the effective date of the cancellation." *Id* at 482. The court further explained that the "plaintiffs had no reason to act immediately to replace their insurance coverage," allowing the defendants "to collect a premium and provide coverage as long as there are no losses and yet remain entitled to choose rescission and deny coverage if a loss occurs." *Id.* at 482-83. The court concluded that because the defendant knew about the misrepresentation and chose to continue to collect a premium until a later date, the defendant waived its ability to rescind the policy. *Id.* at 482. In characterizing the defendant's attempt to void the policy, the court stated that:

> The remedy that defendant seeks is untenable. Defendant wished, upon the discovery of a misrepresentation in the application, to have the right to collect a premium and provide coverage as long as there are no losses and yet remain entitled to choose rescission and deny coverage if a loss occurs. In short, defendant wishes to be able to earn a premium without having to provide coverage. That, however desirable it may be to defendant, is not an available option. . . . [Defendant] cannot have its premium and deny coverage too.

*Id* 482-83.

Accepting Plaintiffs' testimony stating that Boone had knowledge of the Plaintiff's misrepresentation as true, Defendants seek the same result that the court in *Burton*

found "untenable." Both Nasser and Aamer testify that at the meeting with Boone, they
showed him the vehicle registrations listing the correct owners of the vehicles insured
under the policy subsequently issued to Sara and told Boone that Sara did not own the
vehicles. (Dkt. # 12-9, Pg. ID 363, Dkt. # 12-11, Pg. ID 429) Similar to the defendants in
*Burton*, Defendant had the opportunity to "cancel," or refrain from initially issuing Sara
the policy when Boone allegedly learned of the true ownership status of the vehicles.
Furthermore, just as the defendant in *Burton* induced the plaintiffs to believe that
plaintiffs had a valid insurance policy, here, a jury could find that Defendant induced
Plaintiffs to believe that they had a valid policy by continuing to collect insurance
premiums from Plaintiffs after Plaintiffs informed Defendant that Sara did not own the
insured vehicles.

Defendant rescinded the policy only after Plaintiffs submitted insurance
claims—approximately five months after Defendant initially issued Sara the policy. (Dkt.
# 12-3, Pg. ID 295.) As a result, Defendant is not entitled to rescind the policy if it was
aware of the misrepresentation at the time it issued the policy. Defendant cannot have
its premiums and deny coverage too. *See Burton*, 540 N.W.2d at 482-83.

Relatedly, Defendant appears to make a separate but similar argument that,
instead of being based on the common-law affirmative defense of misrepresentation, is
based on the contractual language precluding any intentional fraud or
misrepresentations and providing that the "policy will not provide coverage under any
part of this policy" where there is fraud or misrepresentation. (*See* Dkt. # 12, Pg. ID 256-
60; Dkt. # 1-2, Pg. ID 103.) However, these arguments are one in the same, and
whether presented as a common-law defense or a defense provided for in the insurance

9

contract, Defendant is estopped from rescinding coverage based on misrepresentation or fraud where Plaintiffs can show that Defendant was aware of the misrepresentation and chose not to act on it. *See Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 461 (2005) ("[I]nsurance policies are subject to the same contract construction principles that apply to any other species of contract" and "unless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written.") The cases Defendant has cited are not to the contrary because those cases did not contain facts indicating that the Defendant knew about the alleged fraud or misrepresentation. *See Flowers v. IDS Property Casualty Ins. Co.*, No. 10-cv-15164, 2012 WL 5906728 (E.D. Mich. Nov. 26, 2012); *Martin v. Farm Bureau General Ins. Co. of Mich.*, No. 275261, 2008 WL 1807940 (Mich. Ct. App. April 22, 2008).

Defendant also argues that it would be entitled to rescind the policy because Sara "materially failed to disclose that Nasser did reside with her when the Application required her to list household members age 16+." (Dkt. # 12, Pg. ID 248) The court cannot credit this argument at the summary judgment stage because Defendants have offered no evidence that this misrepresentation was material, i.e., that it "would have had the effect of 'substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charge of an increased premium'." *Oade,* 632 N.W.2d at 131. While a defendant bears the burden of proof on the affirmative defense of misrepresentation, courts generally accept as sufficient the undisputed affidavit of an underwriter who avers that had certain facts been know, the insurance policy would not have been issued or the rate would have been higher. *See Montgomery v. Fidelity &*

10

*Guar. Life Ins. Co.*, 713 N.W.2d 801, 804 (Mich. Ct. App. 2005). Here Defendants have failed to submit an affidavit making such an averment. While the affidavit of Nicholas Marrangoni, Director of Liberty Mutual's Complex Loss Issues department, states that "[Defendant] LM General would not have issued [the] LibertyGaurd Policy . . . to Ms. Almosawi if true and correct information disclosing that Ms. Almosawi did not own or lease the Oldsmobile Aurora and Pontiac Grand Prix was conveyed to LM General in her Application," (Dkt. #12-3, Pg. ID 275), the affidavit is silent as to the materiality of the misrepresentation regarding Nasser's residence. Thus Defendant has, at this stage, failed on the element of materiality as to this argument.

Alternatively, Defendant argues that Sara does not have an insurable interest to support her collision coverage claim because she did not own or lease the vehicles insured under her name under the policy. (Dkt. # 12, Pg. ID 255) The court disagrees. "An 'insurable interest' need not be in the nature of ownership but rather can be any kind of benefit from the thing so insured or any kind of loss that would be suffered by its damage or destruction." *Morrison v. Secura Ins.*, 781 N.W.2d 151, 153 (Mich Ct. App. 2009). The "insurable interest" requirement exists to void policies that "present insureds with unacceptable temptation to commit wrongful acts to obtain payment." *Id.* at 152-53.

Here, drawing all reasonable inferences in the light most favorable to the Plaintiffs, the court agrees with Plaintiffs that Sara has an insurable interest in the vehicles despite not being the owner of the insured vehicles. Sara uses the vehicles to drive short distances and relies on her family members to use the vehicles to provide her with transportation. (Dkt. # 12-13, Pg. ID 480; Dkt. # 18, Pg. ID 586.) As a result, Sara has an interest in the insured vehicles because she relies on the vehicles for

11

transportation. Given that Sara received the benefit of insuring the vehicles under the policy, it is unlikely that Sara or the other Plaintiffs were tempted to "commit wrongful acts to obtain payment." *Morrison* 781 N.W.2d at 152-153. Accordingly, the court rejects Defendant's argument that Plaintiffs do not have an insurable interest to support their collision coverage claim in accordance with the policy.

In sum, Plaintiffs have raised an issue of material fact sufficient to defeat Defendant's Motion for Summary Judgment. Although a misrepresentation of the true owner of the insured vehicles would be a material misrepresentation, Plaintiffs testify that they told Defendant's agent that Sara was not the owner of the vehicles, and therefore, Defendant is charged with this information. As explained above, an insurer cannot sit on knowledge of a misrepresentation and then later rescind a policy when an insured attempts to make a claim.

## IV. CONCLUSION

IT IS ORDERED that Defendants' Motion for Summary Judgment (Dkt. # 12) is DENIED.

 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  July 21, 2016

12

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 21, 2016, by electronic and/or ordinary mail.


 s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522